ROBERT J. DEAN AND WILLIAM WILLS, APPELLANTS, *v.* THE INTERNATIONAL TILE COMPANY (LIMITED), RESPONDENT.

*A broker, employed to sell property, is not authorized to receive payment unless authorized by his principal — when the purchaser will be charged with notice of the owner's title by the terms of the instrument directing the delivery of the property to him by a warehouseman.*

APPEAL from a judgment entered on the verdict of a jury directed by the court in favor of the defendant.

The defendant entered into an agreement with Then & Carden for the purchase of 100 barrels of cement for the price of $235. The cement at the time was in the possession of William Beard & Co. and it never was either delivered to or in the possession of Then & Carden; they were in fact no more than brokers for the sale of merchandise, and made the agreement for the sale at the instance and request of Alexander Keiller, another broker in the employment of the plaintiffs, who were the owners of the cement, which was held in store for them. And after the contract of sale was entered into with the defendant, they made an order for its delivery in the following form:

MEMORANDUM.

*November* 30, 1885.

To WILLIAM BEARD & Co., Erie Basin.

From R. J. DEAN & Co., Bankers and Warehousemen, 302 Greenwich street, New York.

Please deliver to the International Tile Co. one hundred (100) bbls. Gillingham cement. . . . . . . . . . . . . . . . . . . . . . .

$$\left\{ \begin{array}{l} 445\text{--}10 \\ 478\text{--}\ 5 \\ 479\text{--}45 \\ 481\text{--}15 \\ 504\text{--}\ 5 \\ 505\text{--}20 \end{array} \right.$$

R. J. DEAN & CO.

which was delivered to the defendant, and under its authority it obtained the cement from the warehousemen mentioned in the

order. After the defendant had so obtained the cement it paid the purchase-price to Then & Carden by a check payable to their order.

The court at General Term said: " These brokers, as they were at no time intrusted with the possession of the cement or any other evidence of its ownership than the order, had in fact no authority either actual or apparent, to receive this payment; for a broker employed in the sale of property, without authority from his principal, is not entitled to demand or receive payment for the commodity sold. (*Higgins* v. *Moore*, 34 N. Y., 417; *Harrison* v. *Ross*, 44 Supr. Ct. [12 J. & S.], 230.)

" By the order issued by the plaintiffs and received by the defendant for the cement, the fact was made to appear that the plaintiffs, and not Then & Carden, were the owners of the cement, and that the defendant was to receive it under the contract of sale from them as such owners. And the inference was plainly to be drawn, as Then & Carden were not in the possession of the cement, that it was held by the warehousemen for and as the property of the plaintiffs, and that the defendant was to receive it from them and under their authority in fulfilment of the contract of sale. They were admonished in this manner that the plaintiffs were the vendors of the cement and entitled to the payment of the purchase-price agreed upon in the terms of the sale. And the defendant accordingly made payment to the brokers, selling the property at its own risk and peril. If they had paid over the price to the plaintiffs, that would of course have been a satisfaction of the debt. But as they did not, and were not authorized by the plaintiffs to receive the money, payment to them did not discharge the defendant's liability. And although the contract for the sale was made by the brokers without disclosing who the principals were in the sale, the plaintiffs, as the principals, had the right to bring and maintain their action against the defendant for the purchase-price of the property. (*Ludwig* v. *Gillespie*, 105 N. Y., 653.)

" When the sale came to be completed under the order for the goods, the defendant was apprised of the fact that the owners and sellers were the plaintiffs and not Then & Carden, the brokers with whom the defendant dealt. The evidence failed to warrant the direction of a verdict in favor of the defendant, and the judgment

should be reversed and a new trial ordered, with costs to abide the event."

*Charles Blandy* for the appellants.

*E. H. Moeran* for the respondent.

Opinion by Daniels, J., Brady, J., concurred.

Judgment reversed, new trial ordered, costs to abide event.

---

## STEPHEN LOVEJOY, Respondent, *v.* HENRY TIETJEN and Others, Appellants.

*Conveyance of real estate — when the points of the compass, as contained in the deed, are at variance with the true location of the lot, as determined by measurements, the courses and distances must always give way to the monuments.*

Appeal from a judgment in favor of the plaintiff entered after a trial at Special Term.

This action was brought to recover a deposit, made upon the purchase at auction, of certain real estate and the expenses of investigating the title. The plaintiff obtained a judgment for $580.08, damages and costs, and from such judgment this appeal was taken. The question involved arises as to the defendant's title to a part of the premises sold, viz., No. 38 Pike street. At the auction sale the premises were sold as No. 38 Pike street, and by no other description. The lot in question formed part of lot No. 386 upon the map of Rutger's farm, and in 1807 was conveyed to one Leonard Fisher. Leonard Fisher died leaving a last will and testament, which was duly admitted to probate, by which he devised lot No. 38 Pike street, without any other description, to Louisa Langstaff and Augusta Langstaff, who, in 1852; made a conveyance to one Boehringer of the premises by the following description: "All the following premises situate in the city of New York, and described as follows, to wit, being part of the lot No. 38 Pike street, and beginning at the *north-west* corner of said lot, running thence south about fifty feet; thence east twenty-seven feet; thence north about fifty feet to Pike street; thence west along Pike street twenty-